UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ROQUE ARELLANO and<br>MARIANNE SOLORIO,<br><br>      Plaintiff,<br><br>  v.<br><br>TUBE FABRICATION & COLOR,<br>LLC., (a Wisconsin Limited Liability<br>Company) and T AND B TUBE<br>COMPANY, INC., (an Indiana Corp.),<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:18-cv-342 |

**OPINION AND ORDER**

This matter is before the court on the Motion to Dismiss by Defendant Tube Fabrication & Color, LLC Pursuant to Fed.R.Civ.P. 12(b)(2) [DE 16] filed by the defendant, Tube Fabrication & Color, LLC, on December 3, 2018. For the following reasons, the motion is **GRANTED**.

*Background*

The plaintiffs, Roque Arellano and Marianne Solorio, filed this action against the defendants, Tube Fabrication & Color, LLC (Tube Fabrication) and T and B Tube Company (T & B), asserting claims of negligence, strict liability, and punitive damages stemming from events that transpired on February 20, 2017.

Tube Fabrication is a Wisconsin domestic limited liability company with its principal place of business located in Oshkosh, Wisconsin. Tube Fabrication is in the business of designing, engineering, fabricating, assembling, and packaging steel tubular products such as commercial tables and chairs, outdoor furniture, and military equipment. T & B is an Indiana

corporation with its principal place of business located in Gary, Indiana. T & B manufactures, packages, and delivers steel tubing used in a variety of industries. T & B's services include packaging and delivering steel tubing.

The plaintiffs allege that sometime before February 20, 2017, Tube Fabrication placed an order for 2,871 pieces of steel tubing from T & B which was to be delivered from Gary, Indiana, to Tube Fabrication's facility in Oshkosh, Wisconsin on February 20, 2017. The plaintiffs claim that prior to February 20, 2017, T & B contacted Arellano, owner of Rocky's Trucking, Inc., based in Crete, Illinois, to come to its facility in Gary, Indiana, pick up the 2,871 pieces of steel, and deliver it to Tube Fabrication in Oshkosh, Wisconsin.

On February 20, 2017, the plaintiffs claim that Arellano arrived at T & B with his flatbed truck and that T & B's employees loaded the truck. The plaintiffs allege that there was a total of nine (9) pre-banded and packaged bundles (stacked three high) consisting of eight (8) bundles containing 353 pieces of steel tubing and one (1) bundle consisting of 47 pieces of steel. Each bundle weighed approximately 750 pounds and each stack was about six (6) feet tall. The plaintiffs claim that none of the pre-stacked bundles were fastened to another, rather each bundle of tubular steel was banded and wood collared by T & B. The plaintiffs state that T & B determined how the bundles were banded, packaged, loaded, stacked, and shipped. Arellano then placed cargo straps over the bundles and hauled them to Tube Fabrication in Oshkosh, Wisconsin.

When Arrelano arrived at Tube Fabrication's facility, the plaintiffs claim that Arrelano removed the cargo straps and Tube Fabrication employees removed the bundles of steel using a forklift. During the process of removing the bundles, some became unstable, and the top bundle fell off the opposite side of the truck where Arellano was wrapping his cargo straps. The

2

Case 2:21-cv-00581-BHL    Filed 04/21/21    Page 2 of 11    Document 45

plaintiffs claim that the bundle landed on Arellano's foot and knocked him to the ground. Another bundle then fell from the truck and landed on Arellano's pelvis, crushing him. As a result, Arellano and his wife, Solorio, filed the instant lawsuit in this court, located in Hammond, Indiana.

On December 3, 2018, in lieu of answering the complaint, Tube Fabrication filed this motion to dismiss arguing that it is not subject to personal jurisdiction in this court because it is not "at home" in Indiana and it had no connection to the alleged negligence that took place in Indiana which forms the basis of this case. On August 29, 2018, the plaintiffs responded in opposition and on September 11, 2019, Tube Fabrication filed its reply. This case was consented to the magistrate judge on April 9, 2021. [DE 43].

*Discussion*

**Federal Rule of Civil Procedure 12(b)(2)** allows a defendant to move for dismissal for lack of personal jurisdiction. A plaintiff is not required to include facts in the complaint that allege personal jurisdiction. ***Curry v. Revolution Laboratories, LLC***, 949 F.3d 385, 392 (7th Cir. 2020). However, once the defendant moves to dismiss the complaint pursuant to Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." 949 F.3d at 392 (quoting ***Purdue Research Foundation v. Sanofi-Synthelabo, S.A.***, 338 F.3d 773, 782 (7th Cir. 2003).

When the district court exercises diversity jurisdiction, it has personal jurisdiction over a non-resident defendant to the extent permitted by a court of the state in which it sits. ***Purdue Research Foundation***, 338 F.3d at 779: ***Wilson v. Humphreys (Caymen) Limited***, 9816 F.2d 1239, 1243 (7th Cir. 1990). Generally, this inquiry is guided by a two-step process, directing the court to look first to the reach of Indiana's long-arm provision. ***1st Source Bank v. Village of***

3

*Stevensville*, 905 F.Supp.2d 898, 904 (N.D. Ind. Oct. 25, 2015) (citing ***Purdue Research Foundation***, 338 F.3d at 779); ***International Medical Group, Inc. v. American Arbitration Association, Inc***. 312 F.3d 833, 846 (7th Cir. 2002). The second inquiry examines whether the exercise of personal jurisdiction is consistent with federal due process. ***Purdue Research Foundation***, 338 F.3d at 779. However, amendments to the Indiana long-arm provision, Trial Rule 4.4(A), collapsed these concerns into a single inquiry. ***Link America Corporation v. Albert***, 857 N.E.2d 961, 967 (Ind. 2006)("The 2003 amendment to Indiana Trial Rule 4.4(A) was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause.") Accordingly, this court's exercise of personal jurisdiction is gauged solely by its consistency with federal due process.

The federal due process analysis, grounded in "traditional notions of fair play and substantial justice," requires that the court base its personal jurisdiction on the defendant's minimum contacts with the state of Indiana. ***International Shoe Company v. Washington***, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant's contacts must be made purposefully and lead that defendant reasonably to anticipate being hauled into an Indiana court. ***Burger King Corporation v. Rudzewicz***, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985).

The nature and frequency of these contacts may give rise to specific or general jurisdiction. To support the exercise of general jurisdiction, a defendant must demonstrate "continuous and systematic general business contacts with the forum state." ***Helicopteros Nacionales de Colombia S.A. v. Hall***, 466 U.S. 408, 416, 104 S.Ct. 1868, 1873, 80 L.Ed.2d. 404 (1984); ***Purdue Research Foundation***, 338 F.3d at 787 ("These contacts must be so extensive to

be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world") (emphasis in original); see ***J.S.T. Corp. v. Foxconn Interconnect Technology Ltd., et al.***, 965 F.3d 571, 576 (7th Cir. 2020) (holding that "general jurisdiction permits a defendant to be sued in a particular forum for any claim, regardless of whether the claim has any connection to the forum state") (internal citations omitted).

When the contacts with the forum state are less extensive, the defendant still may be subject to specific jurisdiction when the suit arises out of these more limited contacts. ***Hyatt International v. Coco***, 302 F.3d 707, 716 (7th Cir. 2002) (quoting ***World-Wide Volkswagen Corporation v. Woodson***, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) ("This nexus is important...because it aims to give 'a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit'").

When sufficient minimum contacts are met, a defendant still may avoid litigating in a forum if being hauled into that court violates traditional notions of fair play and substantial justice. See ***Burger King***, 471 U.S. at 477, 105 S.Ct. at 2174.

> In this respect, the court, when appropriate, "may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive social policies.

***Purdue Research Foundation***, 388 F.3d at 781 (*quoting* ***International Shoe***, 326 U.S. at 320, 66 S.Ct. at 154).

When the court rules on a defendant's motion to dismiss for lack of personal jurisdiction based upon the submission of written evidence, and not through the resolution of factual issues at a hearing, the plaintiff "need only make out a prima facie case of personal jurisdiction." ***Purdue Research Foundation***, 338 F.3d at 782 (*quoting* ***Hyatt International***, 302 F.3d at 714). In determining whether the prima facie standard has been met, disputes over relevant factual matters are resolved in the plaintiff's favor. ***Purdue Research Foundation***, 338 FD.3d at 782.

As an initial matter, the parties agree that this court does not have general jurisdiction over Tube Fabrication. The plaintiffs have acknowledged that Tube Fabrication is incorporated in Wisconsin with its principal place of business also there. *See* ***Goodyear Dunlop Tires Operations, S.A. v. Brown***, 564 U.S. 915 (2011) (finding that in order to establish general personal jurisdiction over a defendant, "a defendant must have continuous and systematic contacts with the forum," such as its "domicile, place of incorporation, and principal place of business") (internal quotations omitted). Therefore, the dispute boils down to whether Tube Fabrication is subject to specific jurisdiction in Indiana.

The Supreme Court, in determining whether specific jurisdiction exists over a defendant, looks to whether "there was some act by which the defendant purposely availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." ***Goodyear***, 564 U.S. at 2854; ***J.S.T. Corp.***, 965 F.3d at 575. The Supreme Court has pointed out that "specific jurisdiction is very different … the suit must arise out of or relate to the defendant's contacts with the forum." ***Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County***, __ U.S. __; 137 S.Ct. 1773, 1780 (2017) (internal quotations omitted). "In other words, there must be an affiliation between the forum

and the underlying controversy, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." 137 S.Ct. at 1780 (internal quotations omitted).

In its motion, Tube Fabrication claims that specific jurisdiction cannot be established here. It argues that the only claims against it arise from its allegedly negligent unloading of Arellano's truck, which occurred in Wisconsin. Tube Fabrication also points out that the only activity related to the plaintiffs' claims in Indiana was T & B's allegedly negligent packaging loading of bundles onto Arellano's truck.

The crux of the plaintiffs' argument as to how this court has specific jurisdiction over Tube Fabrication is "without Tube Fabrication contracting to buy steel tubing from the Indiana corporation, T & B Tube, the plaintiff would have never been delivering the load of steel and never would have been severely injured when Tube Fabrication was trying to unload it per their agreement with T and B Tube." [DE 40]. The plaintiffs allege that the minimum contact requirement for specific jurisdiction is met by the fact that Tube Fabrication knowingly did business in Indiana by purchasing steel from T & B. The plaintiffs claim that Tube Fabrication has bought steel from T & B seven times during their ongoing "business relationship" which began in 2013. The plaintiffs point out that Tube Fabrication always was responsible for the unloading of the steel tubing when it arrived at its plant, it communicated with T & B to specify how the steel tubing was to be packaged and loaded on the delivery truck, which included an ongoing request to pack the steel using wood blocking and feet to prevent damage during shipment. As a result, the plaintiffs claim that Tube Fabrication's negligence arose out of the very activity it conducted in Indiana, the business relationship with T & B. Lastly, the plaintiffs argue that the jurisdiction of this court over Tube Fabrication would be fair and just.

7

To support their position, the plaintiffs rely on the Seventh Circuit case of ***Deluxe Ice Cream Co. v. R.C.H. Tool Corp.***, 726 F.2d 1209 (7th Cir. 1984). In that case, the court found that an ongoing business relationship in Illinois "invoked the benefits and protections of Illinois law during the course of its business dealings." 726 F.2d at 1216. The events that gave rise to the ongoing business relationship included: a meeting in Illinois in which an agreement concerning the sale of a product was reached and a separate meeting in Illinois discussing the plaintiff's warranty of the product purchased. 726 F.2d at 1215. The court held that "the discussions that took place in Illinois between [the parties] played a part in the subsequent negotiations between [the parties], which led to the contract between [the parties]. The contract under which the plaintiff [wa]s suing for breach of warranty thus l[aid] in the wake of the [defendant]'s commercial activities in Illinois." 726 F.2d at 1216. The court finds that the facts of ***Deluxe Ice Cream Co.*** are distinguishable because the contract formed in ***Deluxe Ice Cream Co.*** was the basis of the lawsuit. Here, the basis of the plaintiffs' claims, as it relates to Tube Fabrication, is the negligent unloading of the truck in Wisconsin. The business relationship between T & B and Tube Fabrication is not relevant to the negligence claims against Tube Fabrication. The fact that Tube Fabrication purchased steel tubing from T & B, located in Indiana, has no connection with Tube Fabrication's employees who may have negligently unloaded the steel tubing in Wisconsin. *See* **Felland v. Clifton**, 682 F.3d 665, 676 (7th Cir. 2012) (finding that a "mere but for causal relationship is insufficient to establish the required nexus between a defendant's contacts and the underlying cause of action," but "declin[ing] to definitively resolve how close the casual connection must be") (internal quotations omitted).

The Seventh Circuit case of ***RAR, Inc. v. Turner Diesel, Ltd.***, 107 F.3d 1272 (7th Cir. 1997) also is instructive. There, the Seventh Circuit answered "the difficult question of how

closely connected a cause of action must be to a defendant's contacts with a forum to justify personal jurisdiction over the defendant in that forum." 107 F.3d at 1274. RAR, an Illinois corporation, sued Turner Diesel, a Scottish corporation, in Illinois for breach of contract. Turner Diesel's only ties to Illinois included various purchases of engine parts from RAR. On at least 100 occasions, RAR submitted bids to Turner Diesel, 20 of which resulted in formal contracts. During transport of an engine to Detroit, the engine came loose from the truck while driving in Ohio. RAR filed suit in an Illinois state court and it was later removed to federal court, also located in Illinois. Turner Diesel moved to dismiss for lack of personal jurisdiction. RAR argued that Turner Diesel was subject to specific jurisdiction in Illinois based on the above described contacts.

>The Seventh Circuit explained:
>
>> "When conducting business with a forum in one context, potential defendants should not have to wonder whether some aggregation of other past and future forum contacts will render them liable to suit there. Unless their contracts are continuous and systematic enough to rise to the level of general jurisdiction, individuals and corporations must be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another … specific jurisdiction is not appropriate merely because a plaintiff's cause of action arose out of the general relationship between the parties; rather, the action must directly arise out of the specific contacts between the defendant and the forum state."

107 F.3d at 1278 (internal quotations and citations omitted). The court concluded with finding that Turner Diesel's "prior Illinois contacts tell the court nothing about RAR's cause of action and shed little light even on the contract generally." 107 F.3d at 1279.

The Seventh Circuit has repeatedly held that in a breach of contract case, "it is only the dealings between the parties in regard to the disputed contract that are relevant to the minimum contacts analysis." ***F. McConnell and Sons, Inc. v. Target Data Systems, Inc.***, 84 F.Supp.2d 961, 967 (N.D. Ind. Feb. 2, 1999) (citing ***RAR, Inc.***, 107, F.3d at 1278); ***Felland,*** 682 F.3d at

9

674; *see generally* **Lexington Insurance Company v. Hotai Insurance Company, Ltd.**, 938 F.3d 874 (7th Cir. 2019). This case is not one of breach of contract. The court recognizes that there were business dealings between T & B and Tube Fabrication and that one of those dealings resulted in a delivery from Indiana to Wisconsin on February 20, 2017. However, the plaintiffs' argument that the previous dealings between Tube Fabrication and T & B are sufficient to meet the minimum contact threshold to haul Tube Fabrication into this court is incorrect.

First, the Seventh Circuit has held that specific jurisdiction cannot be obtained by aggregating unrelated contacts in one state together. That is specifically what the plaintiffs are asking this court to do. The plaintiffs' point to the approximately seven transactions between T & B and Tube Fabrication over the course of four years as evidence of sufficient minimum contacts in Indiana. Not to mention, the plaintiffs' do not allege that any of the negotiations that were involved in the seven transactions took place in Indiana. In **RAR, Inc.**, the Seventh Circuit found no specific jurisdiction in Illinois even though there were over 100 bids and 20 formed contracts between RAR and Turner Diesel. As a result, the only contacts that should be considered is the contact between T & B and Tube Fabrication as it pertains to the specific load of steel tubing that Arellano delivered from Indiana to Wisconsin.

The plaintiffs have filed negligence and punitive damages claims against Tube Fabrication. The alleged negligence on the part of Tube Fabrication occurred in Wisconsin when Tube Fabrication negligently unloaded steel tubing from Arellano's truck. Imposing jurisdiction over Tube Fabrication in Indiana because it purchased the steel tubing from a company in Indiana would not allow Tube Fabrication to "be able to conduct interstate business confident that transactions in one context will not come back to haunt them unexpectedly in another." **RAR, Inc.**, 107 F.3d at 1278; **J.S.T. Corp.**, 965 F.3d at 576 (finding that "even regularly

10

Case 2:21-cv-00581-BHL   Filed 04/21/21   Page 10 of 11   Document 45

occurring sales of a product in a state do not justify the exercise of jurisdiction over a claim unrelated to those sales") (internal citations and quotations omitted). Tube Fabrication's "general relationship" with T & B is not sufficient to establish specific jurisdiction over it in Indiana. As in ***RAR, Inc.***, Tube Fabrications prior contacts with T & B are unrelated to the plaintiffs' negligence claim.

Finally, the plaintiffs argue that personal jurisdiction over Tube Fabrication is fair and just. It is the plaintiffs' position that Indiana law must apply since part of the negligence occurred in Indiana. They claim, not only did the business transaction take place in Indiana, but the steel tubing was bundled, loaded, and shipped from Indiana. This court disagrees with the plaintiffs' rationale. The choice of law issue is separate and distinct from the question of personal jurisdiction. Applying Indiana substantive law to the plaintiffs' claims cannot justify ignoring the due process requirements established by the Supreme Court and the Seventh Circuit.

Based on the foregoing reasons, the Motion [DE 16] is **GRANTED.** The court **DISMISSES** Tube Fabrication & Color, LLC from this matter.

ENTERED this 21st day of April, 2021.

/s/ Andrew P. Rodovich
United States Magistrate Judge